UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11652-GAO

AMERICAN-ARAB ANTI-DISCRIMINATION
COMMITTEE, NATIONAL LAWYERS GUILD,
CYNTHIA QUENTIN BROWN, GABRIEL
CAMACHO, TAREEF KAWA, and
DAN KESSELBRENNER,

Plaintiffs,

v.

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,

Defendant.

ORDER
July 28, 2004

O'TOOLE, D.J.

The plaintiffs brought this action to obtain a declaration that a policy adopted by the Massachusetts Bay Transportation Authority ("MBTA") permitting security searches of handbags, briefcases and other items carried by passengers on the MBTA's trains or buses violates the guarantee of the Fourth Amendment to the United States Constitution against unreasonable searches and seizures. The plaintiffs have sought a preliminary injunction against enforcement of the policy. At the hearing held on their motion, the plaintiffs, without waiving their broader objections, narrowed the focus of the requested preliminary relief to one instance of the implementation of the policy.

In connection with the security planning for the Democratic National Convention being held at the Fleet Center in Boston from July 26 through July 29, the United States Secret Service issued

directives restricting access to streets and highways that pass near the Fleet Center and requiring all persons who enter within a territorial zone surrounding the Fleet Center to submit to security searches. Some of the MBTA's public mass transit vehicles pass through or very nearly by the designated zone. Specifically, some MBTA buses carry passengers to and from suburban locations via Interstate Route 93, which passes close by the Fleet Center, and the MBTA's Orange Line subway passes either underneath or very nearly underneath the Fleet Center. The MBTA has undertaken to conduct an individual visual search of the hand-carried items of all passengers on buses passing by the Fleet Center on Route 93 and all passengers on Orange Line trains before those trains depart either the Community College station for inbound trains, or the Haymarket station for outbound trains, and pass under the Fleet Center security zone. There is no selectivity in the searches; every passenger's carried-on items are examined.

The MBTA argues that the searches are justified because they are "administrative" security searches similar to the security inspections of personal belongings conducted at airports and the entryways to certain kinds of property, such as courthouses and military installations. Such administrative searches have been upheld in the face of objections that they violated the Fourth Amendment. See United States v. Doe, 61 F.3d 107, 109-110 (1st Cir. 1995) (noting that "[r]outine security searches at airport checkpoints pass constitutional muster because the compelling public

interest in curbing air piracy generally outweighs their limited intrusiveness"); Torbet v. United Airlines, Inc., 298 F.3d 1087 (9th Cir. 1998) (upholding airport security search); Morgan v. United States, 323 F.3d 776 (9th Cir. 2003) (upholding search on military reservation); McMorris v. Alioto, 567 F.2d 897 (9th Cir. 1978) (upholding search at entrance to courthouse). See also Chandler v. Miller, 520 U.S. 305, 323 (1997) (suggesting that "where the risk to public safety is substantial and real, blanket suspicionless searches calibrated to the risk may rank as 'reasonable' – for example, searches now routine at airports and at entrances to courts and other official buildings.").

There is a catalog of hijackings and other terrorist incidents involving air transportation that now spans decades, and much attention has been given as a result to airport security, as some of the cited cases indicate. But other transportation systems, including urban mass transit systems, have become targets of terrorists as well. The MBTA calls attention to two subway bombings that occurred earlier this year, one in Madrid on March 11, 2004, in which over 200 persons were killed, and one in Moscow on February 6, 2004, in which approximately forty persons were killed. There were many more persons seriously injured in the bombings.

The Department of Homeland Security has warned that credible intelligence indicates that terrorists continue to plan for a large-scale attack within the United States aimed at disrupting the Nation's "democratic process." It is at least plausible, if not likely, that the attack in Madrid was timed to maximize its disruptive effect on the Spanish elections, pointing up the attractiveness to terrorists of timing a terrorist event to have an impact on the democratic process. It is not unreasonable, then, to think that national party nominating conventions could become terrorist

targets, and when the conventions are held in cities with significant mass transportation systems that serve the convention locations, it is not without foundation to worry that a terrorist event might be aimed simultaneously at the convention and the transit system.

However, while the existence of a terrorist threat against the MBTA or the Fleet Center or both is real and not imagined, it is much more difficult, if not impossible, to try to assess either the likelihood or the imminence of such an attack. While the Court is advised that there is no specific intelligence information suggesting that either the MBTA or the Fleet Center is an identified target, there is also no reason to believe that specific information is necessarily, or even frequently, available before a terrorist attack, so its absence cannot be taken to indicate that the facilities are *not* likely targets. With respect to airport security measures, the absence of specific threat information about a particular flight or even a particular airport does not vitiate either the authority or the wisdom of conducting security screenings generally for *all* flights. When the threat is to *any* flight, *every* flight may be protected by the security searches. "The essential purpose of the scheme is not to detect weapons or explosives or to apprehend those who carry them, but to deter persons carrying such materials from seeking to board at all." United States v. Davis, 482 F.2d 893, 908 (9th Cir. 1973).

There is also no reason to have separate constitutional analyses for urban mass transportation systems and for airline transportation. There may be differences in the security methods that are used or in their manner of implementation, but the fundamental issues should not be substantially affected by the mode of transportation involved.

It seems clear, then, that the first essential question to be asked concerning the validity of an administrative search regime – whether there is a substantial governmental need or public interest that is served by the regime – is to be answered in favor of the MBTA's policy. The next question – just as critical – is whether the privacy intrusion is reasonable in its scope and effect, given the nature and dimension of the public interest to be served.

The intrusion is not insignificant. Passengers are required to open all bags and similar carried-on items to visual inspection, exposing to view what they would otherwise have kept unseen, including personal items carried in a purse, papers in a briefcase, and the like. Similar intrusions are routine in airport searches, however, and perhaps in other non-governmental venues as well, such as the entry gates to sporting events or concerts.

The MBTA points to the steps it has taken to mitigate the intrusion. First, it has in a variety of ways published notice to its riders of the prospect that they may be subject to search. The notice broadly advised riders that their carried-on items could be subject to search while they were riding on MBTA facilities. It would perhaps have been desirable for the MBTA specifically to advise Orange Line and Route 93 bus riders that it was not just a possibility, but a certainty, that their belongings would be searched if (or when) their journey would take them through the Fleet Center security zone. This deficiency by itself, however, does not require finding the plan to be "unreasonable" under the Fourth Amendment, because notice, or notice of a particular kind, while an important factor to be considered, is not a necessary element such that its absence automatically vitiates the reasonableness of the search plan.

5

Notice is a significant factor in the analysis for at least two reasons. First, it tends to reduce the subjective anxiety that MBTA riders might otherwise experience upon being asked to submit to the inspection of their bags if they had no reason to anticipate the inspection. See United States v. Martinez-Fuerte, 428 U.S. 543, 558 (1976). It also provides an opportunity for persons who do not want to permit inspection to avoid traveling on the MBTA during the time when security searches are being conducted. See Davis, 482 F.2d at 913. For the searches directly at issue now, those affecting riders on the Orange Line between the Haymarket and Community College stations and on Route 93 buses, the plan is to limit the searches to the duration of the Convention, and notice provides riders who object to the intrusion the opportunity to temporarily adjust their plans to avoid it.

The second mitigating factor is related. The particular search plan presently at issue is limited both in scope and duration. Only those riders whose journeys will actually take them through the Secret Service-designated security zone are subjected to the search. Riders on other segments of the Orange Line, for example, are not asked to submit to search under this application of the policy. And as noted, the duration of the plan is limited to the four days of the Convention.

Finally, the plan cedes no discretion to the officers conducting the inspections. All riders on the buses and on the trains about to transit the security zone are subject to the inspection, so the officers do not exercise any choice or judgment about whose bags to inspect. The written plan prescribes the inspection method and defines those items that are deemed "prohibited." The plan provides for supervision of the officers who actually do the inspection, and it requires record keeping so the conduct of the inspections can be reviewed afterward.

In sum, the intrusion experienced by the affected riders is very similar to the intrusions imposed under other, increasingly common, administrative security search regimes. The security concerns that motivated the adoption of the scheme are genuine, the scope and duration of the part of the plan that is the focus of the current request for relief are strictly limited, and the published advice that riders on MBTA facilities may be required to submit personal bags and items for inspection prepared riders to expect such searches. In light of these conclusions, the plaintiffs have not established a likelihood of success on their claim that the inspections as described above violate the Fourth Amendment's guarantee against "unreasonable searches."

The motion for a preliminary injunction, as narrowed by the plaintiffs at the hearing, is therefore DENIED.


July 28, 2004                                    \s\ George A. O'Toole, Jr.
DATE                                             UNITED STATES DISTRICT JUDGE